UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARKIM QUICK,

                            Plaintiff,

        v.

WESTCHESTER COUNTY, *et al.*,

                            Defendants.

No. 18-CV-243 (KMK)

OPINION & ORDER

Appearances:

Markim Quick
Malone, NY
*Pro Se Plaintiff*

Mony B.P. Yin, Esq.
Bennett, Bricklin & Saltzburg LLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Markim Quick ("Plaintiff"), currently incarcerated at Franklin Correctional Facility, brings this pro se Action under 42 U.S.C. § 1983 against Westchester County; Aramark Correctional Services ("Aramark"); Donna Blackman ("Blackman"), Shenelle Mosley ("Mosley"), and Manual Mendoza ("Mendoza"), each Aramark employees; Kevin Cheverko ("Cheverko"), Commissioner of the Westchester County Department of Correction ("WCDOC"); and Leandro Diaz ("Diaz"), Deputy Commissioner of WCDOC (collectively, "Defendants").[1] Plaintiff alleges that Defendants violated his constitutional rights while

---

[1] In his Amended Complaint, Plaintiff identifies certain Defendants with incomplete or incorrectly spelled names. (*See* Am. Compl. 1–2 (Dkt. No. 10).) The Court uses the complete and correct spellings of Defendants' names as provided by Defendants.

incarcerated at Westchester County Jail ("WCJ"). Before the Court is Defendants' Motion To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 37).)

For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am. Compl. (Dkt. No. 10)), and are taken as true for the purpose of resolving the instant Motion.

On May 4, 2017, Plaintiff arrived at WCJ. (Am. Compl. 4.)[2] Since his arrival, Plaintiff has received food that "smell[s] rotten"; that "is always pink, because it is not cooked right"; and that "seems to always have other inmates['] hair[] and plastic from the trays" in it. (*Id.*) Further, the "trays are so old that the plastic is peeling into the food" and "have mold and scum" and "leftover food" on them. (*Id.*) When Plaintiff complained about the undercooked food, an unnamed correction officer ("C.O.") told him to "cook it in the microwave." (*Id.*) Plaintiff believes "no one [witnesses] the inmates who prepare [the] food because the food is always not cooked" and "always has stuff or insects" in it. (*Id.* at 5.)

In particular, on December 6, 2017, Plaintiff ate "one of the meats" in an Aramark packaged meal and became sick — he became nauseous and vomited, got diarrhea, headaches, and stomach pain, and suffered weight loss and dehydration. (*Id.* at 4.) Plaintiff checked the packaging and "notice[d] it [had been] expired for" about two months and that "the pouch had a little hole on the cover, which possibly [caused] the package to rot." (*Id.*) Further, an unnamed C.O. "also noticed and observed the rotten[] meat pouch." (*Id.* at 5.) Plaintiff then "went to sick

---

[2] The Amended Complaint does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the Amended Complaint.

2

call," where he was examined by a doctor.  (*Id.* at 4.)  Plaintiff also wrote out a commissary complaint and told Defendant Mosley — identified as an "Aramark worker," (*id.* at 1) — who laughed at Plaintiff and told him to "go to medical," (*id.* at 5).  Plaintiff further complained about the rotten food to Defendant Blackman — identified as an "Aramark commissary supervisor," (*id.* at 1) — who "did not answer"; however, an unnamed C.O. told Plaintiff that Blackman "said 'don't buy commissary then.'"  (*Id.* at 5.)

Plaintiff "wrote a [grievance] about all of this," alleging that Defendants Cheverko and Diaz, (*id.*) — Commissioner and Deputy Commissioner of WCDOC, respectively, (*id.* at 1) — along with Defendant Westchester County, "fail to watch their workers" or "tra[i]n them" and that they "knew that this was going on from previous grievances[] and complaints but refused to change the problem," (*id.* at 5).  Plaintiff further indicates that his grievance was denied and that he filed an appeal.  (*Id.* at 7.)

B.  Procedural Background

Plaintiff's initial Complaint and application to proceed in forma pauperis ("IFP") were filed on January 10, 2018.  (Dkt. Nos. 1, 2.)  The Court granted Plaintiff's IFP application on January 24, 2018.  (Dkt. No. 4.)  On February 6, 2018, the Court issued an Order directing service on Defendants.  (Dkt. No. 6.)  Plaintiff filed the instant Amended Complaint on February 20, 2018; it is substantively identical to the initial Complaint but corrects the spelling of one Defendant's name.  (Dkt. No. 10.)

On July 20, 2018, Defendants filed the instant Motion To Dismiss and accompanying papers.  (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 38).)  Plaintiff filed a response in opposition to the Motion on August 2, 2018.  (Decl. of Markim Quick in

Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 40).) On August 8, 2018, Defendants filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 27).)

II. Discussion

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that Plaintiff failed to exhaust his administrative remedies, fails to allege personal involvement, fails to state a *Monell* claim, and fails to state an Eighth Amendment claim. (*See generally* Defs.' Mem.) The Court addresses each argument separately to the extent necessary.

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

4

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

5

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  Exhaustion

Defendants argue that the Amended Complaint must be dismissed because Plaintiff failed to exhaust his administrative remedies before filing suit. (*See* Defs.' Mem. 18.)

Although the Prison Litigation Reform Act's ("PLRA") exhaustion requirement is mandatory, *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "requires proper exhaustion, which means using all steps that the prison grievance system holds out," *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, alterations, and quotation marks omitted), failure to exhaust is an affirmative defense, not a pleading requirement, *see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (citations omitted). As such, Defendants bear the burden of proving failure to exhaust, *see McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."), and, as Plaintiff correctly notes, (*see* Pl.'s Mem. 4), "inmates are not

required to specially plead or demonstrate exhaustion in their complaints," *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, "dismissal is appropriate on a motion to dismiss where failure to exhaust is clear on the face of the complaint." *Brinson v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018) (citations omitted).

Here, Defendants argue that, although Plaintiff filed a grievance regarding to the December 6, 2017 incident in which he got sick after allegedly eating rotten meat from damaged packaging, (Defs.' Mem. 19; *see also* Compl. 5–6), "[t]here is no proof that Plaintiff . . . utilized the grievance process with respect to his" more general allegations of undercooked, rotten, and dirty food or untrained workers, (*id.*). This argument, however, improperly flips the burden of proof. *See McCoy*, 255 F. Supp. 2d at 248 ("[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."). Nor do Defendants submit documentation or other proof that the Court may consider in this context indicating that Plaintiff failed to complete the grievance process. *See Madison v. Wright*, No. 02-CV-10299, 2004 WL 816429, at *1 (S.D.N.Y. Apr. 13, 2014) (noting that "defendants must present proof of non-exhaustion" (citation and quotation marks omitted)). Thus, it is not "clear on the face of the [C]omplaint" that Plaintiff has failed to exhaust, *Brinson*, 2018 WL 4680021, at *6, and, accordingly, the Court declines to dismiss on these grounds, *see White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *8 (S.D.N.Y. Dec. 21, 2018) (holding that defendants "offer no evidence showing that [the] [p]laintiff in fact failed to exercise the grievance process with respect to" a defendant). Defendants remain free to raise the exhaustion issue in the future "on a more fully-developed record." *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1285417, at *3 (S.D.N.Y. Mar. 28, 2013).

## 2. Personal Involvement

Defendants next argue that Plaintiff's Amended Complaint fails to show that any Defendant was personally involved in the alleged constitutional violations. (*See* Defs.' Mem. 9.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138. To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff names as individual Defendants Mendoza, Mosley, Blackman, Cheverko, and Diaz. As an initial matter, although Mendoza's name and title — Aramark "food service director" — appear in the caption of the Amended Complaint, (*see* Am. Compl. 1–2), Plaintiff fails to name or identify Mendoza anywhere in the body of the Amended Complaint or otherwise connect him to the allegations raised therein, (*see id.* at 4–5). Accordingly, Plaintiff fails to

8

allege Mendoza's personal involvement. *See King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not shown where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint").

As to Mosley and Blackman — the Aramark-employee individual Defendants — Plaintiff alleges that, after getting sick from eating rotten meat on December 6, 2018, he complained to Mosley, an "Aramark worker," (Am. Compl. 1), who laughed and told Plaintiff to "go to medical," (*id.* at 5), and to Blackman, an "Aramark commissary supervisor," (*id.* at 1), who "did not answer," (*id.* at 5). Plaintiff also alleges that an unnamed C.O. told him that Blackman suggested Plaintiff stop buying food from the commissary. (*Id.*) These conclusory allegations fail to meaningfully connect Mosley or Blackman to the rotten food that allegedly made Plaintiff sick. There is no allegation that Mosley or Blackman participated directly in the preparation or sale of food at all (let alone in the preparation or sale of the particular food at issue), established a policy or custom that allowed for rotten food to be provided to inmates, failed to follow a policy or custom on food preparation or were otherwise grossly negligent in allowing others to prepare food without following proper procedures, failed to remedy the food preparation problem after being notified of the issue, or were deliberately indifferent to Plaintiff's condition after being informed of his illness and its cause. *See Grullon*, 720 F.3d at 139 (listing various ways to show personal involvement). Nor does the bare fact that Blackman holds a supervisory role change the analysis, for a defendant "cannot be held liable for the service of rotten [food] based on a *respondeat superior* theory." *Reznickcheck v. Molyneaux*, No. 13-CV-1857, 2014 WL 3746540, at *2 (E.D. Pa. July 29, 2014) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff

9

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are, in sum, no alleged facts showing that Mosley or Blackman were personally involved in the alleged unconstitutional deprivation at issue. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation).

Finally, as to Cheverko and Diaz — WCDOC Commissioner and Deputy Commissioner, respectively, (*see* Am. Compl. 1) — Plaintiff alleges that he "wrote a [grievance] about all of this" in which he claimed that Cheverko and Diaz, along with Westchester County, "fail to watch their workers" or "[train] them" and that they "knew that this was going on from previous grievances[] and complaints but refused to change the problem," (*id.* at 5). Plaintiff further clarifies that he "is suing [Cheverko and Diaz] on the theory of supervisory liability as both [D]efendants had adequate knowledge that WCJ was being served substandard foods and failed to intervene." (Pl.'s Mem. 2.) As noted, however, in order to establish Cheverko and Diaz's personal involvement on a gross negligence, failure to remedy, or deliberate indifference theory of liability, Plaintiff must show more than a "mere 'linkage' to the unlawful conduct through the 'chain of command,'" *Banks*, 48 F. Supp. 3d at 416, and Plaintiff's conclusory allegations fail to do that. Plaintiff does not provide facts alleging *what* Cheverko and Diaz knew about the rotten food problem or *when* they knew about it. Nor does Plaintiff provide any facts alleging that

10

Cheverko and Diaz were responsible for a policy or custom on food preparation, training, or supervision; were grossly negligent in supervising employees responsible for food preparation, or were deliberately indifferent to a food preparation problem. Rather, Plaintiff merely alleges, without factual support, that he complained in a grievance about food preparation issues and that "previous grievances" were filed regarding rotten prison food. (Am. Compl. 5.) Yet, the evidence is to the contrary, as the grievance response attached to the initial Complaint states that Plaintiff's grievance "was the first complaint of its kind," (Compl. 13), and Plaintiff does not contest or otherwise respond to this statement. There are, in sum, no facts alleged from which the Court can conclude Defendants Cheverko and Diaz failed to supervise or train other prison officials as to proper food preparation, were deliberately indifferent to a food preparation problem, or were otherwise personally involved in the alleged constitutional deprivations. *See King*, 2018 WL 6510809, at *6 (holding personal involvement not satisfied where the plaintiff "makes no allegations [the defendant] knew of, participated in, or failed to act in the face of other defendants' alleged deliberate indifference to [the] plaintiff's serious medical need"); *Constant v. Annucci*, No. 16-CV-3985, 2018 WL 1684411, at *4 (S.D.N.Y. Apr. 5, 2018) (holding personal involvement not satisfied where the "allegation merely states, in conclusory terms, that [the supervisory defendants] subjected [the plaintiff] to the conditions complained of"); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (holding personal involvement not satisfied where the plaintiff made conclusory claims that a supervisory official failed to provide proper training and supervision or created a policy).

    Accordingly, Plaintiff fails to allege the personal involvement of any individual Defendant in the alleged unconstitutional deprivations at issue.

### 3. *Monell* Liability

Defendants argue that Plaintiff's claims against Westchester County and Aramark must be dismissed for failure to state a *Monell* claim. (Defs.' Mem. 15.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, the Amended Complaint alleges that Westchester County fails to supervise and train its workers, and that it "knew that this was going on from previous grievances" yet "reused to change the problem." (Am. Compl. 5.) Plaintiff further states that his *Monell* claims are "based on [the] failure to train and supervise kitchen workers," who "never wear gloves" or "hair nets," fail to "properly clean meal trays," and fail to properly "cook meats." (Pl.'s Mem. 3.) These claims, however, are devoid of any detailed factual allegations. Plaintiff does not allege facts suggesting that Westchester County lacks a relevant training or supervisory program or that Westchester County was otherwise deliberately indifferent to food preparation problems. Indeed, as noted, the allegations that Westchester County knew of and was deliberately indifferent to a food preparation problem on the basis of "previous grievances," (Am. Compl. 5), are nonexistent, particularly given that documentation attached to the initial Complaint states, without contradiction by Plaintiff, that Plaintiff's grievance "was the first complaint of its kind," (Compl. 13). Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim, Plaintiff's claims against Westchester County and Aramark must be dismissed, as must any claims against the individual Defendants in their official capacities. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).[3]

---

[3] Because dismissal is required on grounds of Plaintiff's failure to show the personal involvement of any individual Defendant in the alleged constitutional deprivation and failure to state a *Monell* claim, the Court need not resolve at this time Defendants' argument that Plaintiff fails to allege sufficient facts to state an Eighth Amendment violation. (See Defs.' Mem. 12–15.) In correcting the deficiencies identified in this Opinion, Plaintiff will have the opportunity to further develop his Eighth Amendment claim.

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted.

Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, the instant Amended Complaint. The second amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 37), and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: March 7, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE